IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:19-cv-00344

| | |
|---|---|
| VEOLIA WATER SOLUTIONS & TECHNOLOGIES SUPPORT, | )<br>)<br>) |
| Petitioner, | )<br>) |
| v. | ) **PETITION TO COMPEL**<br>) **ARBITRATION**<br>) |
| WESTECH ENGINEERING, INC. AND NORDIC WATER PRODUCTS AB | )<br>)<br>) |
| Respondents. | ) |

Petitioner, by and through counsel, complains of Respondents and petitions as follows:

1. The Federal Arbitration Act is clear. A written provision to arbitrate in a contract involving commerce "*shall* be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). A party harmed by the failure, neglect, or refusal of another party to arbitrate under a written arbitration agreement may petition the United States courts to order the arbitration to proceed. 9 U.S.C. § 4. This case is the type of case for which Congress created the Federal Arbitration Act. The parties have a contract involving commerce, and the contract includes an arbitration provision. Respondents breached their arbitration obligation by filing a federal lawsuit regarding an arbitral dispute. When Petitioner initiated an arbitral proceedings, Respondents promptly indicated their refusal to participate in that proceeding. Petitioner now petitions this Court to enforce the parties' arbitration agreement and order Respondents to arbitration.

**PARTIES & JURISDICTION**

2. Petitioner Veolia Water Solutions & Technologies Support is a French Company with its principal place of business in Montgolfier, Saint Maurice, France.

3. WesTech Engineering, Inc. is a California corporation with its principal place of business in Salt Lake City, Utah.

4. Nordic Water Products AB is a Swedish corporation with its principal place of business in Gothenburg, Sweden.

5. The Court has jurisdiction of this matter under 9 U.S.C. §§ 1 *et seq*. and pursuant to 28 U.S.C. § 1331.

6. Petitioner and Respondents were previously parties to a lawsuit in this judicial district, *Veolia Water Solutions & Technologies Support v. WesTech Engineering, Inc.,* 5:15-cv-00592 (E.D.N.C.) (the EDNC Lawsuit). In 2016, the parties negotiated a settlement of that dispute and the lawsuit was dismissed with prejudice. As part of the settlement, the parties, to include Petitioner and Respondents, entered into a binding agreement, a true and accurate copy of which is attached hereto at Exhibit A. The settlement agreement is governed by the laws of the State of North Carolina, implicates the parties' commercial activities in the United States and includes an arbitration provision.

7. The instant dispute between the parties involves a continuation patent that is a member of the same family of patents that was involved in the EDNC Lawsuit and is subject to the provision to arbitrate.

8. This petition arises from Respondents refusal to arbitrate pursuant to the arbitration provision that was negotiated and entered into in North Carolina as part of the resolution of the EDNC Lawsuit.

9. This Court has personal jurisdiction over Respondents and venue is proper in this judicial district.

# FACTS

10.     Petitioner is a wholly-owned subsidiary of Veolia Water. Veolia Water is a global leader in water treatment systems and processes sold to municipalities and industrial clients. As a world-wide enterprise, Veolia Water consists of numerous companies or business units. In the course of designing and developing water treatment systems and processes, Veolia Water engineers and scientists innovate and develop cutting edge technology used in the treatment of water.

11.     One of Veolia Water's business units is Hydrotech Veolia Water Systems AB (Hydrotech), headquartered in Vellinge, Sweden. Hydrotech designs, develops, manufactures, and sells disc filters for filtering water. Over the past 20 years, Hydrotech, through creative designs and solving persistent problems and drawbacks to conventional disc filters, has substantially advanced the state of the art in disc filter technology. As a result, Hydrotech disc filter innovations are the subject of a substantial, world-wide patent portfolio.

12.     For many years, conventional disc filters were plagued by what is referred to as an "entrainment problem" and inherent capacity limitations. Many conventional disc filters included a series of heavy stainless steel disc-shaped filter members mounted on a drum and including compartments for holding water to be filtered. Filtration takes place due to a head pressure that causes the water to flow out of the disc-shaped filter members through filters disposed on the sides of the disc-shaped filter members. From time-to-time, the filters must be cleaned. This is achieved by rotating the disc-shaped filter members and the compartments thereof above the level of the water in the disc filter where the filters are backwashed. Rotating the disc-shaped filter members, for purposes of backwashing, introduces the entrainment problem. As the disc-shaped filter members are rotated, water in the compartments becomes

3

entrained with the rotary motion of the disc-shaped filter members. Hence, water held in the compartments is swept upwardly with the rotary motion of the compartments. This results in two major problems:

    a. First, when a rotating compartment carrying the entrained water reached a certain height, the entrained water suddenly rushed downwardly into the underlying drum. Water rushing towards the drum dislodges already filtered suspended solids and particles that are adhered to the inside of the filters. Once dislodged, the walling water washes the once filtered suspended solids and particles back into the drum where they are filtered again. This repeatedly gives rise to suspended solids being filtered, captured, and then dislodged from the filter media to return to the drum where they must be re-filtered. This continuous re-filtering of the suspended solids and particles materially decreases the efficiency and capacity of the rotary disc filter.

    b. Second, the water entrainment problem adversely impacts the structural design of conventional disc filters. Water contained in the compartments is heavy. To avoid structural failures, conventional disc-shaped filter members and their compartments had to be strong and robust to carry the additional load of lifting the entrained water. This resulted in conventional filter frames being constructed of costly and heavy materials, such as stainless steel. This structural requirement, in turn, limited the size and number of disc-shaped filter members that could be placed on a single drum. This adversely impacted the capacity of conventional disc filters.

13. In the early 2000s, Hydrotech undertook an extensive development program

4

Case 5:21-cv-00317-FL   Document 5   Filed 08/07/19   Page 4 of 9

aimed at solving the entrainment problem, as well as the limited capacity of conventional disc filters. In tackling these problems, Hydrotech engineers defied both convention and tradition to design and develop the first commercially viable disc filter that successfully solved these problems.

14. Hydrotech solved the entrainment problem by designing the disc-shaped filter members such that, when the filter members rotate, water held in the compartments passes from one compartment to a trailing compartment rather than being swept up by the rotary motion of the compartments.

15. Hydrotech solved the limited capacity problem by foregoing the conventional wisdom that said that commercially viable disc filters required heavy, robust steel filter frames and successfully replaced such frames with plastic frames. This enabled more disc filter members to be placed on a drum without the drum failing, substantially increasing the capacity of the disc filter per unit area occupied by that filter.

16. These innovations have made the Hydrotech disc filter the leading disc filter in the world. More Hydrotech disc filters are sold throughout the world than any other disc filter. Hydrotech disc filter inventions have also been widely copied by competitors over the world. Petitioner owns the patents for the Hydrotech technology and has litigated some of the relevant patents. This has resulted in millions of dollars of settlement and licensing fees, and required competitors to design around the patents.

17. In the EDNC Lawsuit, Petitioner charged WesTech with infringing a disc filter patent owned by Petitioner, U.S. Patent No. 8,961,785 (the '785 patent) and instituted a patent infringement action against WesTech in this judicial district. After months of litigation, the parties engaged in mediation. Nordic Water, who supplied the infringing disc filters to WesTech

and was involved in related patent litigation in Europe, participated in the mediation. At mediation, the parties, to include Petitioner and Respondents, entered into the settlement agreement at Exhibit A to settle the EDNC Lawsuit.

18. At the time they entered into the agreement, Respondents knew that Petitioner had a related continuation patent application, based on the same patent family as the '785 patent, pending in the United States Patent Office (application serial no. 14/628,521, filed February 23, 2015). Respondents, as well as Petitioner, wanted to avoid the cost and disruption of future litigation related to the continuation application. As part of the settlement agreement, the parties first attempted to negotiate a license to avoid issues for future patents that may be granted in the same patent family. When the parties were unable to agree on license terms, the parties decided to craft a dispute resolution provision to streamline and provide for the quick and efficient resolution of any dispute regarding later-granted patents in the same patent family as the patent at issue in the EDNC Lawsuit. To that end, the parties agreed to an arbitration procedure for addressing disputes regarding any later-issued patents in that patent family, to include infringement and invalidity issues. The relevant provision reads as follows:

> <u>Continuation Applications in USA</u>. In the event a future patent issues in the United States from the family of patents that includes the '785 patent and [Petitioner] believes that it is infringed by the redesigned manufactured, sold, or offered for sale by [Respondents], [Petitioner] shall provide notice to [Respondents]. The parties shall have ninety (90) days from the date of the notice to negotiate. If the parties fail to reach an agreement, they shall engage in mandatory binding baseball arbitration for determining the sole issue of an appropriate royalty rate, if any. The arbiter may consider issues relating to invalidity and non-infringement when deciding which tendered royalty rate to accept.

[Ex. A, ¶8.]

19. The parties intended their arbitration provision to efficiently resolve any issues regarding any later-granted patents in the same patent family. This provision was entered into to

allow for the complete resolution of these issues. For example, the arbitrator could find the patent invalid or is valid but not infringed, and thus find no royalty is owed. The arbitrator could alternatively find that the patent is valid and infringed and award a particular royalty. The arbitration would also be conducted according to a "baseball" format, meaning the parties would submit their proposed royalty rate to the arbiter in advance of a hearing, and the arbiter would be required to select one of the two submissions after conducting an evidentiary hearing.

20. Petitioner's continuation application matured into a patent as expected - U.S. Patent No. 10,188,971 (the '971 patent), issued January 29, 2019. The '971 patent is directed to a disc filter used in treating water and wastewater. The disc filters manufactured and sold by Respondents infringe the '971 patent. Therefore, on January 30, 2019, Petitioner notified Respondents of its claim of patent infringement as required by ¶8 of the settlement agreement. A true and accurate copy of the notice letter is attached hereto at Exhibit B.

21. The parties discussed settlement and negotiated over the following 90 days. During the negotiation period, Petitioner provided Respondents with a detailed infringement chart based on Respondents' disc filter marketing material. Respondents did not respond to the merits of the infringement contentions or provide a substantive response to the infringement contentions. Ultimately, no agreement was reached during the 90 day negotiation period.

22. Instead of submitting to arbitration as they promised in the settlement agreement, Respondents filed but did not serve a declaratory judgment action in Utah upon expiration of the 90 day negotiation period. A true and accurate copy of Respondents' complaint in that action is attached hereto at Exhibit C. Respondents' declaratory judgment action violates the aforementioned arbitration agreement.

23. In accordance with the parties' agreement to arbitrate, Petitioner instituted a proceeding with JAMS, an arbitration body that is considered a leader in arbitrating complex and international disputes. A true and accurate copy of the demand for arbitration filed with JAMS is attached hereto at Exhibit D.

24. Petitioner sent a copy of its demand for arbitration with JAMS to Respondents. In response, Respondents refused to participate in the arbitration. A true and accurate copy of Respondents' refusal is attached hereto at Exhibit E.

25. Petitioner now demands that the parties proceed to arbitrate Petitioner's claim as per the agreement to arbitrate. This court should order Respondents to comply with the terms of ¶8 of the settlement agreement and immediately submit to participating in the JAMS proceeding, or in such other binding arbitration as the Court deems appropriate.

## CLAIM I
## ENFORCEMENT OF ARBITRATION PROVISION
## 9 U.S.C. § 4

26. Petitioner repeats and incorporates the preceding paragraphs.

27. The parties have a binding arbitration agreement between them.

28. Respondents have failed and refused to comply with the terms of the agreement. In particular, Respondents' refusal to submit themselves to binding arbitration caused and continues to cause irreparable harm to Petitioner.

29. The Court should enjoin Respondents from proceeding in the Utah lawsuit and from initiating or instigating any other related litigation until such time and conditioned upon completion of binding arbitration between the parties.

30. The Court should order Respondents to immediately submit to and participate in the binding arbitration of the disputes referenced above. In particular, the Court should order

Respondents to participate in the JAMS proceeding, or, alternatively, designate an arbitration proceeding in which the parties should participate.

**PRAYER FOR RELIEF**

Petitioner prays the Court grant the following relief:

A. Order Respondents to immediately proceed to binding arbitration in accordance with the terms of their written obligations;

B. Order Respondents to immediately participate in the pending JAMS arbitration or any other arbitration proceeding that this Court deems appropriate;

C. Enjoin Respondents from proceeding or being involved with any litigation against Petitioner, to include Respondents' pending civil litigation in Utah, until such time as the parties have completed binding arbitration.

D. Award Petitioner its costs and fees associated with this proceeding; and

E. Award or grant such other and further relief as may be just and proper.

Respectfully submitted this the 7th day of August, 2019.

By: */s/ Anthony J. Biller*
Anthony J. Biller
NC State Bar No. 24,117
Emily M. Haas
NC State Bar No. 39,716
2501 Blue Ridge Road, Suite 390
Raleigh, North Carolina 27607
Telephone: (984) 220-8750
Facsimile: (877) 398-5240
Email: ajbiller@michaelbest.com
emhaas@michaelbest.com

Larry L. Coats
NC State Bar No. 5,547
1400 Crescent Green, Suite 300
Cary, North Carolina 27518
Telephone: (919) 854-1844
Facsimile: (919) 854-2084
Email: lcoats@coatsandbennett.com

*Attorneys for Veolia Water Solutions and Technologies Support*