Anne T. Freeland (12096)
MICHAEL BEST & FRIEDRICH, LLP
2750 E. Cottonwood Pkwy., Suite 560
Cottonwood Heights, Utah 84121
Telephone: (801) 833-0500
Facsimile: (801) 931-2500
Email: atfreeland@michaelbest.com

Anthony J. Biller (pro hac vice)
ENVISAGE LAW
2601 Oberlin Road Suite 100
Raleigh, North Carolina 27608
Telephone: (919) 755-1317
Facsimile: (919) 782-0452
Email: ajbiller@envisage.law

Larry L. Coats (pro hac vice)
COATS & BENNETT, PLLC
1400 Crescent Green, Suite 300
Cary, North Carolina 27518
Telephone: (919) 854-1844
Facsimile: (919) 854-2084
Email: lcoats@coatsandbennett.com

*Attorneys for Petitioner Veolia Water Solutions
& Technologies Support*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH - CENTRAL DIVISION**

| | |
|---|---|
| VEOLIA WATER SOLUTIONS & TECHNOLOGIES SUPPORT,<br><br>Petitioner,<br><br>v.<br><br>WESTECH ENGINEERING, INC. AND NORDIC WATER PRODUCTS AB<br><br>Respondents. | **REPLY IN SUPPORT OF VEOLIA'S RENEWED PETITION TO COMPEL ARBITRATION**<br><br>Case No. 2:20-cv-00043-JNP<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

## I. INTRODUCTION

Nordic Water Products AB and WesTech Engineering Inc. (Respondents) continue to flout their contractual obligations to arbitrate this patent dispute and instead double down on their breaches by instituting multiple declaratory judgment actions in Utah and North Carolina. The court should promptly enforce what Veolia Water Solutions & Technologies Support ("Veolia") and Respondents bargained for – a meaningful arbitration of the dispute.

Respondents do not dispute that the arbitration agreement is valid and enforceable. Respondents admit that a patent dispute exists that centers on a Veolia patent, U.S. Patent No. 10,188,971 (the '971 patent) and a disc filter manufactured and sold by Respondents. Further, Respondents do not deny they have the right to raise non-infringement and invalidity defenses before the arbiter.

Instead, Respondents grossly misconstrue the arbitration agreement, ignoring its plain language that makes infringement and validity issues arbitrable. In doing so, Respondents urge the court to put arbitration on hold and endorse a complicated and expensive bifurcated procedure where infringement and validity are litigated in a federal district court and thereafter the dispute is transferred to an arbiter where an appropriate royalty is litigated. This is the antithesis of what was negotiated and agreed upon and utterly contravenes the purpose of alternative dispute mechanisms. Respondents do not (because they cannot) pretend that this convoluted and inefficient procedure is what the parties intended when the arbitration agreement was negotiated. They are simply attempting to avoid and delay arbitration.

## II. THE ARBITRATION AGREEMENT LITERALLY ENCOMPASSES INFRINGEMENT AND VALIDITY ISSUES

Respondents' argue that the arbitration agreement only encompasses the determination of an appropriate royalty, and that a royalty cannot be determined until infringement and validity

issues are litigated in the Eastern District of North Carolina (EDNC).[1] This is at odds with the plain language of ¶ 8 of the arbitration agreement, which unambiguously specifies that if the parties fail to reach an agreement within the 90-day negotiating period, they shall engage in binding baseball arbitration where infringement and validity issues as well as an appropriate royalty, if any, are arbitrated. [ECF No. 5, Exhibit A, ¶ 8] The "if any" qualification means that there are circumstances where no royalty is appropriate. These no royalty circumstances arise when the arbiter finds that the '971 patent is invalid or not infringed.

Respondents advance a number of flawed arguments contending that infringement and validity issues are outside of the scope of the arbitration agreement. These arguments mince words, dissect the arbitration agreement, and take sentences out of context. Respondents argue that the arbitration agreement only allows the arbiter to "consider" infringement and validity issues – not to decide them. [ECF No. 66, pg. 8] That is a nonsensical interpretation of ¶ 8 of the arbitration agreement. It is at best a distinction without a difference. "Consider" and "decide" in the context of the arbitration agreement are as a practical matter the same.[2] Further, Respondents' argument contradicts the requirements of 35 U.S.C. § 294 (In any arbitration involving patent infringement, "the defenses provided for under [35 U.S.C.] section 282 shall be considered by the arbitrator if raised by any party to the proceeding."). If Respondents' self-serving argument were accurate, section 294 would be superfluous since it too uses the word "consider."

---

[1] Respondents' declaratory judgment action filed in the EDNC court will likely be dismissed or stayed pursuant to 9 U.S.C. §§ 3 and 4 of the FAA. After all, the infringement and validity issues raised in the declaratory judgment action are the same as those encompassed by the arbitration agreement.
[2] Respondents' "consider" and "decide" argument is ironic. Respondents insisted during negotiations that they be able to raise and litigate non-infringement and invalidity defenses in the arbitration agreement.

3

Respondents also argue that the phrase "for determining the sole issue of an appropriate royalty rate, if any, limits the arbitration to only determining a royalty rate." *Id.* This argument removes the phrase from context and ignores its true significance. The appropriate context is:

> The parties] shall engage in mandatory binding baseball arbitration for determining the sole issue of an appropriate royalty rate, if any. The arbiter may consider issues relating to invalidity and non-infringement when deciding which tendered royalty rate to accept.

[ECF No. 5, Exhibit A, ¶ 8]

The "sole issue" reference is a limit on Veolia's type of recovery. Under the Patent Act, a patent owner has the right to pursue lost profits, enhanced damages, attorney fees and injunctive relief. 35 U.S.C. §§ 283, 284. In negotiating the arbitration agreement, Respondents insisted that Veolia give up its rights to lost profits, enhanced damages, attorney fees and injunctive relief. To advance the arbitration agreement, Veolia capitulated and agreed to limit its damages to an appropriate royalty.

Respondents argue that it is important for the arbiter to know which claims of the '971 patent are valid and infringed. This argument fails because it presumes that the arbitration agreement does not encompass infringement and validity issues. By addressing non-infringement and invalidity defenses advanced by Respondents, the arbiter knows what claims, if any, are valid and infringed.

Respondents arguments regarding the virtues of declaratory judgment actions are irrelevant. [ECF No. 66, pp. 7-8] The parties bargained for an arbitration. Veolia has a contractual right to arbitrate infringement, validity and royalty issues. The inference that arbitration is somehow inferior to a declaratory judgment litigation is not true. Arbiters routinely arbitrate patent cases in many arbitration forms, such as JAMS, and have special rules that guide how infringement and validity issues are handled and resolved. Moreover, in terms of finality

4

and binding, arbitration has the same attributes as a declaratory judgment action. In fact, the arbiter's award will finally resolve all of these issues and will constitute *res judicata*. "[A] valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." Restatement (Second) of Judgments § 84(1) (1982), *cited in U.S. Postal Serv. V. Gregory*, 534 U.S. 1, 16 (2001) (Ginsburg, J., concurring); *see also, Clinkscales v. Duke Univ.*, No. 1:12-CV-1354, 2013 U.S. Dist. LEXIS 196290, at *4 n.1 (M.D.N.C. Apr. 18, 2013) (same). More importantly, however, the argument is irrelevant. If Respondents were adverse to arbitration agreements, they should not have entered into one. Further, federal policy strongly favors enforcement of arbitration agreements.

### III. UNDER THE FEDERAL ARBITRATION ACT, ANY DOUBT AS TO THE SCOPE OF AN ARBITRATION AGREEMENT MUST BE RESOLVED IN FAVOR OF ARBITRATION

The scope of the arbitration agreement is not in doubt. The explicit and unambiguous language of the arbitration agreement makes infringement and validity issues arbitrable. But even if the scope is in doubt, "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 3353 (1985). This rule applies "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Indeed, "any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

5

Case 5:21-cv-00317-FL   Document 68   Filed 02/15/21   Page 5 of 10

covers the asserted dispute." *Nestle Waters North America*, *Inc. v. Bollman*, 505 F.3d 498, 503-04 (6th Cir. 2007).

## IV. RESPONDENTS FAIL TO ARTICULATE A LEGAL BASIS FOR DENYING VEOLIA'S PETITION TO COMPEL ARBITRATION

Not surprisingly, Respondents do not mention the Federal Arbitration Act (FAA). Nor do they attempt to explain why the FAA's "strong federal policy in favor of enforcing arbitration agreements" does not apply to this dispute. *See Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 217, 105 S. Ct. 1238, 1240 (1985); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207 (2006). Instead, Respondents, without any legal support, argue that the court should deny or dismiss Veolia's petition to compel arbitration. This disregards the fundamental thrust of the FAA. That is, the FAA requires, rather than permits, district courts to direct parties to arbitrate issues encompassed by an arbitration agreement. 9 U.S.C. §§ 3 and 4; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985).

Respondents mistakenly rely upon *Beckman Instr. v. Technical Dev. Corp.,* 433 F.2d 55 (7th Cir. 1970), which has been statutorily overruled. The court there affirmed a refusal to stay patent validity litigation because the arbitration clause at issue did not mention issues of patent invalidity and because issues of patent validity "are inappropriate for arbitration proceedings and should be decided by a court of law…." *Id.* at 63. Foremost, Congress changed that rule in 1982 through enactment of 35 U.S.C. § 294 which specifically upholds the enforceability of arbitration agreements to address issues of patent infringement and validity. Further, Congress stated that in the arbitration of any patent disputes pursuant to the Federal Arbitration Act, all the defenses provided for under the Patent Act, *id.* § 282, shall be available to the accused infringer. *Id.* § 294(b). *Beckman* is no longer good law. Second, in § 294(b), Congress manifested its clear

6

intention that in any patent arbitration, all defenses relevant to the asserted patent shall be arbitrable.

Respondents also cite *Akzenta Paneele + Profile GmbH v. IVC US, Inc.,* 218 WL 1014631 (N.D.Ga. 2018). *Akzenta Paneele* is not on point. The issues – validity of a sublicense agreement and patent infringement – were not the subject of an arbitration agreement. Here, infringement, validity and royalty issues are all a part of the arbitration agreement. In any event, in *Akzenta Peneele*, the district court stayed the patent infringement litigation in favor of the arbitration proceeding.

## V. JUDICIAL ECONOMY AND CONSISTENT OUTCOMES ARE BEST ACHIEVED THROUGH ARBITRATION

Respondents argue that ordering an arbitration would not be consistent with judicial economy and would create a risk of inconsistent outcomes. [ECF No. 66, pg. 9] In reality, the opposite is true. There is no doubt that setting the stage for the Respondents to litigate this dispute in district court will cause delay, inconvenience, expense, and an unseemly race to judgment, and perhaps inconsistent judgments. The average cost of litigating a patent case in federal court is in the millions of dollars. The cost of resolving this matter through baseball arbitration pales in comparison. Patent infringement litigation in district courts takes years – not months.

## VI. JAMS IS AN APPROPRIATE ARBITRAL VENUE FOR THIS DISPUTE

Veolia initiated an expedited arbitration proceeding with JAMS, and Respondents refused to voluntarily participate. [ECF No. 5-4 & 5-5] JAMS is a leading arbitration forum. Its arbitrators are selected from legal experts, and include retired state and federal judges, as well as

7

Case 5:21-cv-00317-FL   Document 68   Filed 02/15/21   Page 7 of 10

attorneys. The forum is known for providing efficiency and speed in resolving conflicts.[3] JAMS further maintains an Intellectual Property Practice Group for addressing intellectual property disputes. JAMS' arbitrators for its Intellectual Property Practice Group are experts in their respective intellectual property subject matters and include both national and international patent experts.[4] The JAMS forum provides for an expedited resolution of this dispute. It is reasonable for this Court to order the parties to arbitrate their dispute before JAMS.

Respectfully submitted this 15th day of February, 2021 by:

/s/ Anthony J. Biller
Anthony J. Biller
*Pro Hac Vice* admission
ENVISAGE LAW
2601 Oberlin Road Suite 100
Raleigh, North Carolina 27608
Telephone: (919) 755-1317
Facsimile: (919) 782-0452
Email: ajbiller@envisage.law

/s/ Larry L. Coates
Larry L. Coats
*Pro Hac Vice* admission
COATS & BENNETT, PLLC
NC State Bar No. 5,547
1400 Crescent Green, Suite 300
Cary, North Carolina 27518
Telephone: (919) 854-1844
Facsimile: (919) 854-2084
Email: lcoats@coatsandbennett.com

/s/ Anne T. Freeland
Anne T. Freeland
UT State Bar No. 12096
MICHAEL BEST & FRIEDRICH, LLP
2750 E. Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Telephone: (801) 833-0500

---

[3] "JAMS Arbitration Advantages," *available at* https://www.jamsadr.com/arbitration (last accessed February 13, 2021).
[4] "JAMS Intellectual Property Practice Group," *available at* https://www.jamsadr.com/intellectual-property (last accessed February 13, 2021).

Facsimile: (801) 931-2500
Email: atfreeland@michaelbest.com

*Attorneys for Veolia Water Solutions and Technologies Support*

# CERTIFICATE OF SERVICE

I hereby certify that on the **15th** day of **February 2021**, the foregoing **REPLY IN SUPPORT OF VEOLIA'S RENEWED PETITION TO COMPEL ARBITRATION** was filed using the Court's CM/ECF filing system, which will provide notice of the filing to all counsel of record as follows:

Glenn R. Bronson
James C. Watson
Traskbritt, PC
230 South 500 East, Suite 300
Salt Lake City, UT 84102
GRBronson@traskbritt.com
JCWatson@traskbritt.com

Clifton E. McCann
David A. Wilson
Thompson Hine LLP
1919 M. Street, N.W., Suite 700
Washington, DC 20236
Clifton.McCann@ThompsonHine.com
David.Wilson@ThompsonHine.com

David Jaglowski
Thompson Hine LLP
41 South High Street, Suite 1700
Columbus, OH 43215
David.Jaglowski@ThompsonHine.com

Einer Stole
Kristin M. Cobb
Covington & Burling LLP
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001
estole@cov.com
kcobb@cov.com

/s/ Anne Freeland

*Attorney for Veolia Water Solutions and Technologies Support*