IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| VEOLIA WATER SOLUTIONS & TECHNOLOGIES SUPPORT, <br><br> Petitioner, <br><br> v. <br><br> WESTECH ENGINEERING, INC. and NORDIC WATER PRODUCTS AB, <br><br> Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) | NO. 5:21-CV-317-FL |
| WESTECH ENGINEERING, INC. and NORDIC WATER PRODUCTS AB, <br><br> Plaintiffs, <br><br> v. <br><br> VEOLIA WATER SOLUTIONS & TECHNOLOGIES SUPPORT, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | NO. 5:20-CV-630-FL |

**<u>ORDER</u>**

These related cases arising out of a patent dispute are before the court on separate motions by Veolia Water Solutions & Technologies Support ("Veolia") to compel arbitration in Case No. 5:21-CV-317-FL (DE 63), and to stay in Case No. 5:20-CV-360-FL (DE 14). These motions have been briefed fully, and in this posture, the issues raised are ripe for ruling.[1] For the following reasons, the motions are granted.

---

[1] As detailed herein, case No. 5:21-CV-317-FL was transferred to this court and assigned to the undersigned district judge on August 11, 2021, with the instant motion to compel arbitration pending.

## STATEMENT OF THE CASES

Veolia commenced the instant Case No. 5:21-CV-317-FL, by filing a petition to compel arbitration in this court on August 7, 2019 (the "arbitration action").[2] Veolia seeks to have this court enforce an arbitration agreement contained within a settlement agreement (the "settlement agreement") executed by the parties to resolve a prior lawsuit in this court, <u>Veolia Water Solutions & Technologies Support v. WesTech Engineering, Inc.</u>, 5:15-CV-592-FL (E.D.N.C.) (the "2015 EDNC lawsuit"), regarding a patent assigned to Veolia, United States Patent No. 8,961,785 ("the '785 patent"). Veolia seeks an order directing respondents in the arbitration action, Nordic Water Products, AB, ("Nordic") and WesTech Engineering, Inc. ("WesTech") to immediately proceed to binding arbitration in an allegedly pending JAMS[3] arbitration proceeding, or any other arbitration that the court deems appropriate.

In the meantime, on a parallel track, Nordic and WesTech commenced a predecessor to the instant Case No. 5:20-CV-630-FL against Veolia in the District of Utah, on July 16, 2019, seeking a declaratory judgment as to validity and infringement regarding a related continuation patent assigned to Veolia, United States Patent No. 10,188,971 ("the '971 Patent"). That case, originally designated No. 2:19-CV-497-JNP in the District of Utah, was dismissed by that court and then refiled in this court on November 25, 2020, as the instant Case No. 5:20-CV-630-FL (the "declaratory judgment action").

---

[2] The instant arbitration action originally was filed in this court under the case number 5:19-CV-344-FL, then transferred by this court to the District of Utah in order entered January 22, 2020. See <u>Veolia Water Sols. & Techs. Support v. WesTech Eng'g, Inc.</u>, No. 5:19-CV-344-FL, 2020 WL 365564, at *7 (E.D.N.C. Jan. 22, 2020). Following proceedings in Utah, the case then was transferred back to this court on August 11, 2021, where it has been assigned a "revised case number of 5:21-CV-317-FL." (DE 74).

[3] JAMS is the name of a provider of arbitration and mediation services. It was originally founded as "Judicial Arbitration and Mediation Services, Inc.," but now uses only JAMS as its full name. <u>See</u> https://www.jamsadr.com/about-the-jams-name/

In sum, while both the instant arbitration action and declaratory judgment action were, at one point, pending in the District of Utah, they are now both before this court, and there are no longer any related pending matters in the District of Utah. Currently pending now in the arbitration action is Veolia's renewed motion to compel arbitration, which was filed originally on January 18, 2021, in the District of Utah, and transferred here as a pending motion with the case on August 11, 2021.

In support of the instant renewed motion to compel arbitration, Veolia relies upon exhibits filed in support of its original petition, comprising the settlement agreement, correspondence between the parties, Veolia's demand for arbitration, and the complaint filed by WesTech and Nordic in the declaratory judgment action. In response, WesTech and Nordic rely upon the same documents, plus additional correspondence between the parties and with JAMS, as well as the '785 and '971 patents and additional related filings with the United States Patent and Trademark Office. Veolia filed a reply in support of its motion shortly thereafter.

Currently pending now in the declaratory judgment action is Veolia's motion to stay, which was filed March 23, 2021, while the predecessor to the declaratory judgment action was pending in the District of Utah. On its face, the motion to stay seeks an order staying the declaratory judgment action "until such time as the United States District Court for the District of Utah rules on [Veolia's] petition to compel . . . arbitration." (DE 14 at 1). In substance, in its brief in support of a stay, Veolia requests a stay of the declaratory judgment action "until arbitration is completed," pursuant to 9 U.S.C. § 3. (DE 14-2 at 9). In addition, in briefing on the motion to stay, the parties rely upon documents already referenced with respect to the motion to compel arbitration.

3

Case 5:21-cv-00317-FL   Document 75   Filed 09/01/21   Page 3 of 16

## STATEMENT OF FACTS

The facts pertinent to Veolia's motions may be summarized as follows. Veolia is a French company with its principal place of business in France. WesTech and Nordic are California corporations with principal places of business in Utah and Sweden, respectively.

Veolia owns patents for filter technology used in water treatment systems and processes sold to municipalities and industrial clients, which technology is developed by an affiliated entity, Hydrotech Veolia Water Systems AB ("Hydrotech").[4] According to Veolia, Hydrotech designed a filter system in which, during filter rotation, "water held in . . . compartments passes from one compartment to a trailing compartment rather than being swept up by the rotary motion of the compartments." (Mot. (DE 63) ¶ 19).[5]

In the 2015 EDNC lawsuit, Veolia claimed that WesTech infringed the '785 patent, which is a disc filter patent assigned to Veolia, and WesTech counterclaimed for patent invalidity and unenforceability.[6] The settlement agreement, executed in September 2016, recites that "at a mediated settlement conference conducted in Durham, North Carolina, on June 15, 2016, [Veolia], WesTech and [Nordic] negotiated a full and final settlement of the [2015 EDNC lawsuit]."[7]

---

[4] According to the motion, Veolia is a "wholly-owned subsidiary" of an entity denominated "Veolia Water," and that "[o]ne of Veolia Water's business units is Hydrotech," an entity based in Sweden. (Mot. (DE 63) ¶¶ 15-16).

[5] Unless otherwise specified, all citations to docket entries refer to documents filed in the instant arbitration action.

[6] In the civil cover sheet to the 2015 EDNC case, Veolia noted another prior case in this court as being related, captioned Veolia Water Solutions & Technologies Support v. Siemens Industry, Inc. et al., No. 5:11-cv-296-FL, a patent case involving the same technology and predecessor patents, which were subject of a claim construction order by this court. See Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc., No. 5:11-CV-00296-FL, 2014 WL 8769776, at *1 (E.D.N.C. May 5, 2014). The 2011 case was closed by stipulation of dismissal in 2015.

[7] The settlement agreement also settled a lawsuit in Denmark between Veolia and Nordic over a related European patent, thus providing the basis for Nordic's participation in the settlement agreement. (Settlement Agreement (DE 5-1) at 1-2).

(Settlement Agreement (DE 5-1) at 2). As part of the settlement, WesTech and Nordic agreed to a "permanent redesign" of its "SuperDisc" filters sold in the United States, and a payment of $350,000.00 to Veolia. (Id.). Veolia covenanted not to sue with regard to claims that the redesigned filter infringes the '785 patent. (Id. at 3).

In addition, the parties included the following arbitration provision in the settlement agreement ("arbitration provision"):

> Continuation Applications in USA. In the event a future patent issues in the United States from the family of patents that includes the '785 patent and Veolia believes that it is infringed by the redesigned manufactured, sold, or offered for sale by WesTech or [Nordic], Veolia shall provide notice to WesTech and [Nordic]. The parties shall have ninety (90) days from the date of the notice to negotiate. If the parties fail to reach an agreement, they shall engage in mandatory binding baseball arbitration for determining the sole issue of an appropriate royalty rate, if any. The arbiter may consider issues relating to invalidity and non-infringement when deciding which tendered royalty rate to accept.

(Settlement agreement (DE 5-1) ¶8)).

According to the motion, "[p]etitioner's continuation application matured into a patent as expected -- U.S. Patent No. 10,188,971 ("the '971 patent"), issued January 29, 2019." (Mot. (DE 63) ¶ 26). "The '971 patent is directed to a disc filter used in treating water and wastewater." (Id.). According to the motion, the disc filters manufactured and sold by WesTech and Nordic allegedly infringe the '971 patent.

One day after the '971 patent issued, Veolia sent a notice to WesTech and Nordic stating, in pertinent part:

> Pursuant to Paragraph 8 of the Settlement Agreement, we are providing notice that an additional patent from the family of the litigated patent, [the '875 patent], has issued as [the '971 patent], a copy of which is attached. Consistent with paragraph 8, Veolia hereby notifies [WesTech] and [Nordic] that the disc filters being imported into the United States by [Nordic] and the disc filters being sold by [WesTech] infringe the '971 patent.
>
> Paragraph 8 provides that the parties have ninety (90) days from the date of this notice to negotiate a resolution of this matter. Shortly Veolia will contact counsel

for [WesTech] and [Nordic] and discuss appropriate ways to proceed with the negotiation.

(DE 5-2 at 1-2).

WesTech and Nordic responded to Veolia's notice on March 6, 2019, asserting that "Veolia's letter does not provide meaningful notice to [WesTech and Nordic] of the alleged infringement of the '971 patent," and that they "cannot consider it sufficient to trigger the 90-day negotiation period in Paragraph 8 of the Settlement Agreement." (DE 67-7 at 2). WesTech and Nordic requested a "good faith response" by March 14, 2019. (Id. at 3).

Veolia replied to WesTech and Nordic on March 12, 2019, asserting that "[t]here are no other conditions for setting forth the notice of infringement" in paragraph 8 of the settlement agreement, and that its January 30, 2019 letter "complies with the provisions of [paragraph 8]." (DE 67-8 at 2). Notwithstanding that position, Veolia explained that "the disc filter that forms the basis for Veolia's charge of infringement is the DynaDisc filter" made by Nordic and sold by WesTech, and that it infringes 26 separate claims of the '971 patent. (Id.).

In the following weeks, the parties engaged in an attempt by telephone conference and email communications to reach a resolution. (DE 67-9 at 3-4). On April 10, 2019, WesTech and Nordic informed Veolia that they "have serious questions about Veolia's basis for alleging that [Nordic's] DynaDisc$^{TM}$ infringes the '971 patent." (Id. at 2). They also addressed grounds for invalidity.

On April 30, 2019, ninety days after Veolia's January 30, 2019, letter, and the last day of the negotiation period provided for in paragraph 8 of the settlement agreement, Veolia provided a chart to WesTech and Nordic asserting a comparison between the claims in '971 and the alleged infringing "Dynadisc." (DE 67-10) (the "Veolia infringement chart").

About six weeks later, on July 16, 2019, WesTech and Nordic commenced the instant declaratory judgment action, seeking a declaration and judgment that each claim of the '971 patent is invalid and that WesTech and Nordic do not infringe any claim of the '971 patent. In particular, WesTech and Nordic discuss the Veolia infringement chart, and they assert reasons why their products do not infringe any asserted claims in the '971 patent. (DE 67-11 ¶¶ 66-70).

On July 29, 2019, Veolia submitted a demand for arbitration with JAMS, requesting a hearing in Raleigh, North Carolina. (DE 67-12 at 5; DE 5-4 at 1-40) (the "demand for arbitration"). In its demand for arbitration, Veolia references its January 30, 2019, notice of infringement and the March 6, 2019, response by WesTech and Nordic, as well as its infringement chart. Veolia asserts it believes WesTech and Nordic "have marketed infringing disc filters," and the "parties have failed to reach an agreement during the negotiating period." (Demand for arbitration (DE 5-4) ¶ 26). Thus, Veolia "demands that the parties arbitrate as provided for" in the arbitration agreement. (Id.).

Veolia served WesTech and Nordic on the same day with its demand for arbitration. (DE 1-5 at 1-2). WesTech and Nordic responded to the demand for arbitration on August 5, 2019, stating that they have never consented to arbitrate under JAMS administration and they have "no intention of doing so now." (Id. at 1). In addition, they asserted that "issues related to invalidity are relevant to any arbitral decision arising from a demand on the part of Veolia for royalties," and they suggested that the appropriate course of action is "therefore to defer any decision on whether and where to arbitrate until the district court has answered" the question of the '791 patent's invalidity. (Id.). They separately asserted to JAMS that they "reject Veolia's allegation of patent infringement," and they asserted that JAMS "should take no action on" Veolia's demand for arbitration. (DE 66-14 at 3).

7

## COURT'S DISCUSSION

A.   Motion to Compel Arbitration

Section 4 of the Federal Arbitration Act ("FAA") authorizes a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition [a] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. It further provides that, when presented with such a motion, a court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id.

In reviewing a motion to compel arbitration, the "court accepts as true the allegations in the complaint that relate to the underlying dispute between the parties." Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 233 (4th Cir. 2019) (quotations omitted). If, however, the "'making of the arbitration agreement be in issue,' then 'the court shall proceed summarily to the trial thereof.'" Id. (quoting 9 U.S.C. § 4). The court is obliged to conduct a trial only "when a party unequivocally denies 'that an arbitration agreement exists,' and 'show[s] sufficient facts in support thereof,'" under a summary judgment standard. Id. (quoting Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015)).

When faced with a motion to compel arbitration, the court analyzes only two "gateway matter[s]." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2006). First, the court must determine whether "a valid agreement to arbitrate exists between the parties." Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999). Second, where the court concludes there is such an agreement, the court next asks whether "the specific dispute falls within the substantive scope of that agreement." Id.

8

Here, the "gateway matter[s]" are satisfied. Howsam, 537 U.S. at 83. First, the arbitration agreement is valid, where it is in writing and executed by the parties. (See DE 5-1 at 1-11). WesTech and Nordic suggest in passing that there is "a serious question as to whether it constitutes an enforceable arbitration agreement at all," because of the absence of terms as to the rules and/or institution governing an arbitration. (Resp. (DE 66) at 8).[8] The omission of these terms in the arbitration agreement, however, does not render it invalid. The FAA expressly provides a mechanism for determining forum and selection of arbitrators, which the court addresses further below. See 9 U.S.C. § 5. The suggested omitted terms concern "issues relating to the procedural aspects of the arbitration itself," which do not impact the arbitrability of the dispute. Dockser v. Schwartzberg, 433 F.3d 421, 425 (4th Cir. 2006).

Second, the specific dispute between the parties falls within the substantive scope of the arbitration agreement. In particular, the specific dispute between the parties is delineated on the one hand by Veolia's demand for arbitration, which asserts that WesTech and Nordic "have marketed infringing disc filters," in violation of the '971 patent, and requests a determination of "a reasonable royalty rate . . . for past and future sales . . . that infringe." (DE 5-4 at 8). On the other hand, WesTech and Nordic asserted in response to the demand that they "reject Veolia's allegation of patent infringement," (DE 66-14 at 3), and that "issues related to invalidity are relevant to any arbitral decision arising from a demand on the part of Veolia for royalties." (DE 1-5 at 1).

The instant dispute as so delineated falls within the scope of the plain terms of the arbitration agreement. In particular, the arbitration agreement requires Veolia to "provide notice to WesTech and [Nordic]" if it "believes that [the continuation patent] is infringed," (DE 5-1 at

---

[8] Page numbers in citations to briefs are to the page number specified on the face of the brief, and not the page number supplied as a footer by the court's case management/electronic case filing (CM/ECF) system.

9

4), which Veolia did in its January 30, 2019 letter. (DE 5-2 at 1-2). Where the parties fail to "reach an agreement" after 90 days of the notice of infringement, the arbitration agreement states "they shall engage in mandatory binding baseball arbitration for determining the sole issue of an appropriate royalty rate, if any," (DE 5-1 at 4), which is consistent with Veolia's request for "[t]he arbiter [to] conduct baseball style arbitration to determine a reasonable royalty rate." (DE 5-4 at 8). Finally, the arbitration agreement allows the arbiter to "consider issues relating to invalidity and non-infringement when deciding which tendered royalty rate to accept," (DE 5-1 at 4), which provision encompasses infringement issues raised by the parties, as well as invalidity issues raised by WesTech and Nordic. (DE 5-4 at 8; DE 66-14 at 3; DE 1-5 at 1). Thus, the parties' dispute falls within the substantive scope of the arbitration agreement.

WesTech and Nordic argue, nonetheless, that the court should not compel arbitration because issues of invalidity and non-infringement are "predicate issues for any decision on a royalty." (Resp. at 7). Thus, they suggest, the issues of invalidity and non-infringement should be decided first by a court, before an arbitrator can decide on an appropriate royalty rate, if any. This argument misses the mark on two levels. First, the only gateway requirements for arbitration are a valid agreement and a dispute within its scope. Hooters, 173 F.3d at 938. Once both of those gateway issues are met, as here, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. It is thus irrelevant whether there are other issues that could be decided first by a court, so long as there is a dispute within the scope of the arbitration agreement. This, alone, is a sufficient basis to grant Veolia's motion to compel arbitration.

Second, and in addition, the arbitration agreement here is broad enough to encompass the parties' dispute over issues of invalidity and non-infringement. The arbitration agreement is

10

triggered, in the first instance, by an assertion of "infringe[ment]" by Veolia. (DE 5-1 at 4). This puts the issues of infringement and non-infringement front and center in any arbitration. Moreover, the arbitration agreement expressly states that "[t]he arbiter may consider issues relating to invalidity and non-infringement when deciding which tendered royalty rate to accept." (DE 5-1 at 4). This confirms that invalidity also falls within the scope of any arbitration concerning a royalty rate.

WesTech and Nordic suggest that the arbitration agreement should be read narrowly to preclude an arbitrator from "deciding" issues of invalidity and non-infringement, where the agreement specifies only that the arbitrator may "consider" those issues, and that arbitration is "for determining the sole issue of an appropriate royalty rate, if any." (Id.). The arbitration agreement, however, is susceptible to a broader interpretation, in which an arbitrator is permitted to decide patent invalidity or non-infringement questions, as a component of the determining whether a royalty is appropriate, or the amount of any royalty. There is likewise no indication in the text of the arbitration agreement that the parties contemplated judicial determination of non-infringement or invalidity before arbitration could commence.

Because the arbitration agreement is "susceptible to a meaning which covers the [parties'] dispute, [it] must be construed in favor of arbitration." Washington Square Sec., Inc. v. Aune, 385 F.3d 432, 437 (4th Cir. 2004). This is because "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT & T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986) (quotations omitted). If there are any doubts as to scope raised by the argument of WesTech and Nordic, these "[d]oubts should be resolved in favor of coverage," id., and any

11

"ambiguities as to the scope of the arbitration clause itself" must be "resolved in favor of arbitration." Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 476 (1989). In sum, given a choice between a narrower interpretation and a broader interpretation, the broader one prevails here.

WesTech and Nordic cite to Georgia-Pac. Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), for the proposition that "[s]everal of the factors for determining a reasonable royalty . . . hinge on the scope of the infringed claims." (Resp. at 9). This, however, is precisely why it is important to interpret the arbitration agreement broadly to encompass the parties' disputes over validity and infringement. Since determining a reasonably royalty hinges on the scope of infringed claims, the arbitrator cannot be precluded from considering infringement and invalidity issues in reaching a determination as to royalty.

WesTech and Nordic also cite to Beckman Instruments, Inc. v. Tech. Dev. Corp., 433 F.2d 55, 57 (7th Cir. 1970), in arguing that this court should first determine issues of infringement and invalidity in the declaratory judgment action before ordering arbitration of the royalty issue. On the issue of arbitration, Beckman is inapposite for several reasons. First, both the nature of the dispute and the language of the arbitration agreement in Beckman were materially different from the instant case. There, a sub-licensee refusing to arbitrate or pay royalties "challenged the validity of the [subject] patent and the legality of the sublicensing agreement." 433 F.2d at 57 (emphasis added). The arbitration agreement, in turn, provided for arbitration of "[a]ny controversy between the parties . . . regarding (1) whether or not certain apparatus sold by [sub-licensee] falls within the scope of [patent rights or subject to royalty] as defined in [the agreement] or (2) payments made by [sub-licensee] to [sub-licensor] as royalties . . . ." Id. at 62 n. 1. Contrary to the instant case, the arbitration agreement in Beckman was not expressly triggered by an assertion of

infringement and it did not mention that an arbitrator could consider invalidity or non-infringement. Indeed, the court in Beckman stated "[i]t is evident that the parties did not expressly provide for arbitration of patent validity questions," id. at 62-63, which is not the case here.[9]

Moreover, the holding in Beckman pertaining to arbitration has been superseded by statute. In particular, the court held that invalidity "questions are inappropriate for arbitration proceedings and should be decided by a court of law." Id. at 63. However, in 1982, Congress enacted 35 U.S.C. § 294, which provides that, in any arbitration of a dispute regarding patent infringement, "the defenses provided for under [35 U.S.C.] section 282 [which include invalidity] shall be considered by the arbitrator if raised by any party to the proceeding." Accordingly, nothing in the language of the instant arbitration agreement, nor the law, precludes an arbitrator from deciding non-infringement and invalidity questions in the course of determining a reasonable royalty rate.

Finally, WesTech and Nordic cite to Newbanks v. Cellular Sales of Knoxville, Inc., 548 F. App'x 851, 852 (4th Cir. 2013), as an example of a case in which a court held a dispute between the parties fell outside the scope of an arbitration agreement. Newbanks is instructively distinguishable. There, plaintiffs in litigation limited their claims in scope "to only those acts occurring prior to the execution of the compensation agreements" containing arbitration agreements. Id. at 853. The court's analysis turned on this time limitation in the plaintiffs' claims, and on the lack of any agreement between the parties during the relevant time frame requiring arbitration. Id. at 855. Here, by contrast, there is no such time limitation in the parties' dispute,

---

[9] Another case cited by WesTech and Nordic, Akzenta Paneele + Profile GmbH v. IVC US, Inc., No. 1:17-CV-3600-TWT, 2018 WL 1014631, at *1 (N.D. Ga. Feb. 21, 2018), is similarly inapposite, because the parties proceeded to arbitrate a dispute regarding an attempted sub-licensing of patents. In any event, the court there stayed litigation on infringement pending an outcome of arbitration. Id. at 2.

13

and the parties' arbitration agreement is broad enough to encompass the claims raised in the declaratory judgment action.

In sum, a valid agreement to arbitrate exists between the parties, and their dispute falls within the substantive scope of that agreement. Therefore, the court must compel arbitration under the terms of that agreement. The court turns next to the procedural terms of that arbitration and the resulting status of the declaratory judgment action.

B.   Procedural Terms of Arbitration

As noted previously, the instant arbitration agreement does not specify the forum for arbitration, nor the method of naming or appointing an arbitrator. Section 5 of the FAA provides a mechanism for making this determination:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy <u>the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein</u>; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (emphasis added).

Here, given that there is no method for selecting an arbitrator in the arbitration agreement, "the court shall designate and appoint an arbitrator . . . as the case may require." <u>Id.</u> Veolia has through its motion and demand for arbitration sought to arbitrate before JAMS, and defendant has refused to arbitrate before JAMS, without suggesting any alternative arbitration forum. "JAMS [is a] well respected arbitral organization[.]" <u>Hayes v. Delbert Servs. Corp.</u>, 811 F.3d 666, 673 (4th Cir. 2016). It "excel[s] at . . . sort[ing] out both the major and minor details of how the arbitration will proceed." <u>Id.</u> Accordingly, the court finds good cause to designate and appoint

JAMS as the forum for arbitration. Any remaining issues regarding the selection of an individual arbitrator and the procedural mechanisms for arbitration shall be determined by JAMS as it sees fit and in accordance with the terms of the arbitration agreement.

C.     Motion to Stay[10]

Under § 3 of the FAA, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."

Here, in the declaratory judgment action, WesTech and Nordic seek a declaration and judgment that each claim of the '971 patent is invalid and that WesTech and Nordic do not infringe any claim of the '971 patent. In particular, WesTech and Nordic discuss the Veolia infringement chart, and they assert reasons why their products do not infringe any asserted claims in the '971 patent. (DE 67-11 ¶¶ 66-70). In this manner, consistent with the court's analysis of the motion to compel, the issues raised by WesTech and Nordic are subject to arbitration under the terms of the parties' arbitration agreement.

Therefore, pursuant to § 3 of the FAA, Veolia's motion to stay is granted, and the instant declaratory judgment action is stayed pending conclusion of the arbitration.

---

[10] Where the initial relief sought by Veolia in its motion to stay is moot, the court construes Veolia's motion as requesting more broadly in substance a stay of the declaratory judgment action "until arbitration is completed," pursuant to 9 U.S.C. § 3. (DE 14-2 at 9). Defendant in its opposition to the motion to stay also addresses the substance of Veolia's arguments regarding the arbitrability of the parties' dispute, which the court incorporates into its discussion of the motion to compel. (See Resp. (Case No. 5:20-CV-630-FL, DE 17) at 7-9).

## CONCLUSION

Based on the foregoing, Veolia's motions to compel arbitration in Case No. 5:21-CV-317-FL (DE 63), and to stay in Case No. 5:20-CV-360-FL (DE 14), are GRANTED. The court ORDERS the parties to proceed with arbitration before JAMS in accordance with the arbitration agreement in the parties' settlement agreement (Case No. 5:21-CV-317-FL (DE 5-1) ¶ 8). All proceedings in the declaratory judgment action, Case No. 5:20-CV-360-FL, are STAYED pending completion of arbitration. The parties in the declaratory judgment action are DIRECTED to file a joint status report, within 90 days of the date of this order, and every 90 days thereafter, regarding the status of arbitration. The clerk is DIRECTED to close Case No. 5:21-CV-317-FL.

SO ORDERED, this the 1st day of September, 2021.

LOUISE W. FLANAGAN
United States District Judge